IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ELLEN B. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:15-cv-00086 |
| | ) | |
| OMNI HOTELS MANAGEMENT | ) | By: Elizabeth K. Dillon |
| CORPORATION, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In this premises liability action, which was removed to this court on the basis of diversity jurisdiction, plaintiff Ellen Thomas seeks to recover for personal injuries she sustained when she slipped and fell near a fountain at a resort managed by defendant Omni Hotels Management Corporation (Omni). The case is before the court on Omni's motion for summary judgment. (Dkt. No. 45.) For the reasons stated below, the court will grant Omni's motion.

I. BACKGROUND

This case arises from a slip and fall that occurred at the Omni Homestead Resort (the Homestead) in Hot Springs, Virginia, which is managed by Omni. (Answer ¶ 1, Dkt. No 12.) Plaintiff and her husband, Carl Thomas, Sr., arrived at the Homestead mid-afternoon on November 12, 2013. (E. Thomas Dep. 54:20–25, Dkt. No. 47-1; C. Thomas Dep. 9:2–4, Dkt. No. 47-3.) When they arrived the weather was "a bit windy" but sunny, with temperatures in the 40s or 50s. (C. Thomas Dep. 9:15–20.) The following morning, the Thomases walked into the town of Hot Springs for breakfast at approximately 8:45 a.m. (E. Thomas Dep. 58:7–8, 59:3–4.) The parties agree that the temperature was below freezing that morning: Mr. Thomas testified

1

that he read a temperature sign indicating that it was 22 degrees. (C. Thomas Dep. 12:9–13.) There was no indication that there had been any rain. (E. Thomas Dep. 61: 10–16.)

On their way out of the resort, the Thomases walked by the fountain where plaintiff later fell. (E. Thomas Dep. 59:3–11.) The base of the fountain was a circular pool, approximately five feet in diameter and approximately one foot deep, with a raised ledge around it. (Broce Dep. 11:23–12:5, Dkt. No. 47-6; *e.g.*, Pl.'s Ex. 7, Dkt. No. 47-7.) In the middle of the pool was a shallow bowl on a raised pedestal, standing approximately three feet high. (Broce Dep. 11:16–22; Pl.'s Ex. 7.) Omni employees described the fountain as a "bubbling type" fountain, where water fills the upper bowl from the top of the fountain, and then cascades from the upper bowl into the reservoir at the fountain's base. (Broce Dep 12:12–14; Shober Dep. 21:14–16, Dkt. No. 47-5.) Surrounding the fountain was a walkway made of a white textured material similar to cement. (Shober Dep. 22:14–23:10.) The walkway and fountain area were at least partially covered by a roof, and partially surrounded by the spa building and a gate to the rest of the homestead property. (Pl.'s Exs. 7–8; Broce Dep. 12:15–25; Shober Dep. 12:2–13:11.) The gate was typically opened in the morning by spa employees, who would also visually inspect the fountain area. (Shober Dep. 14:6–16:3.) That morning, the fountain was running and there were icicles hanging from the fountain's upper bowl. (Broce Dep. 10:1–3, Pl.'s Ex. 8.) Neither plaintiff nor her husband slipped as they walked by, and neither testified that they noticed ice on the walkway. (E. Thomas Dep. 64:15–24.)

The Thomases returned from breakfast just before 9:30 a.m. and once again walked by the fountain. (*See* Pl.'s Ex. 10, Dkt. No. 47-10; E. Thomas Dep. 66:1–14.) This time, plaintiff's feet "flew out from under [her]" and she fell, landing with her right side on the ledge of the fountain and her right arm in the fountain. (E. Thomas Dep. 70:24–71:16.) She states that she

2

fell on ice, although neither plaintiff nor Mr. Thomas ever saw ice in the area of plaintiff's fall.[1] (E. Thomas Dep. 66:1–14.) Around 10 a.m., roughly thirty minutes later, Omni employees who went to inspect the fountain observed clear ice on a portion of the walkway around the fountain. (Broce Dep. 8:17–24; 21:7–16.)

Thomas sues Omni, claiming that Omni was negligent in failing to maintain the fountain and failing to remove ice from the area surrounding the fountain. (Amended Compl. ¶ 4, Dkt. No. 11.) Thomas surmises that sometime during the night of November 12 or the morning of November 13, 2013, the wind blew water from the fountain onto the surrounding walkway, which froze and created a dangerous condition. (*See generally* Pl.'s Br. Opp'n, Dkt. No. 47.) Omni moves for summary judgment, arguing that Thomas has failed to establish that Omni had notice of the dangerous condition. Thomas contends in her brief that the evidence is sufficient to show that Omni failed to make the icy walkway safe or remove the ice, failed to properly inspect the walkway, and knew or should have know of the icy condition. (*Id.* at 1.)

## II. DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)); *see* Fed. R. Civ. P. 56(a). If, after adequate discovery, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," such a failure

---

[1] For purposes of this motion, the court will assume that plaintiff slipped on ice.

3

Case 5:15-cv-00086-EKD-JCH   Document 59   Filed 03/07/17   Page 3 of 10   Pageid#: 1258

"necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and "[t]he moving party is 'entitled to summary judgment as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

   B. **Analysis**

Under Virginia law, which applies here, "'[a]ll negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person.'" *Jarmak v. Ramos*, 497 F. App'x 289, 291 (4th Cir. 2012) (quoting *Steward ex rel. Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 254 (Va. 1991)); *see Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188, 189–90 (Va. 1962). Virginia law recognizes a special relationship between innkeepers and guests, *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 432 (Va. 2006), *aff'd on reh'g*, 641 S.E.2d 68 (Va. 2007), which imposes on innkeepers a heightened duty of care "to use the utmost care and diligence of very cautious persons; and they will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against." *Norfolk & W. R. Co. v. Birchfield*, 54 S.E. 879, 883 (Va. 1906) (quoting *Connell v. Chesapeake & Ohio Ry. Co.*, 24 S.E. 467, 468 (Va. 1896)). However, this special relationship does not make an innkeeper the insurer of a guest's safety, *Taboada*, 626 S.E.2d at 433, and in order to recover, an injured guest "must show that the owner had knowledge, actual or constructive, that a defect existed and that such defect created an unsafe condition." *Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161 (Va. 1977); *see Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 452 (4th Cir. 2004); *Taboada*, 626 S.E.2d at 433; *see also Jarmak*, 497 F. App'x at 294.

4

"Because an innkeeper owes a duty of care to its guests to inspect and discover unsafe conditions, it can be held liable to a guest under the theory of constructive notice."[2] *Jarmak*, 497 F. App'x at 293. Constructive notice "may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its [unsafe] condition." *Hodge*, 360 F.3d at 454 (quoting *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993)) (alteration in original); *Jarmak*, 497 F. App'x at 294. If plaintiff fails to come forward with evidence showing that the dangerous condition both existed for a sufficient amount of time and was discoverable upon an adequate inspection, Omni is entitled to summary judgment. *Jarmak*, 497 F. App'x at 294; *see Hodge*, 360 F.3d at 451; *Logan v. Boddie-Noell Enters.*, No. 4:11-cv-8, 2012 U.S. Dist. LEXIS 5345, at *16 (W.D. Va. Jan. 18, 2012); *Grim*, 434 S.E.2d at 890 ("Hence, if the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case."). "Although constructive notice cannot be established by mere speculation, it is usually, if not always, established by circumstantial evidence." *Jarmak*, 497 F. App'x at 293 (citations omitted).

Both parties rely heavily on *Jarmak*, an unpublished Fourth Circuit case. In that case, the plaintiff (Jarmak) rented a cabin for several days from Ramos, the owner, notifying Ramos that he intended to use a cotton rope hammock hung between two trees in Ramos's backyard. *Id.* at 290. When Jarmak sat on the hammock, the ropes snapped and he fell to the ground. *Id.* After falling, Jarmak noticed that the snapped ropes were frayed, and left a note to Ramos stating that the ropes were rotted and some had snapped. *Id.* Ramos testified that, although she looked at the hammock on a regular basis, she was not sure when she last inspected it or used it before Jarmak's rental. *Id.* at 290–91. She further testified that her inspections of the hammock involved looking at it when she was doing yard work in the vicinity. *Id.* at 291.

---

[2] Plaintiff does not contend that Omni had actual notice of the ice around the fountain.

Vacating the district court's grant of summary judgment to Ramos, the Fourth Circuit noted that, as an innkeeper, Ramos owed a heightened standard of care to Jarmak, her guest. *Id.* at 292. That duty encompassed a "duty to inspect the premises to determine if and when repairs [were] needed." *Id.* at 292 (quoting *Gumenick v. United States*, 193 S.E.2d 788, 795 (Va. 1973)). Pointing to evidence that Ramos knew the ropes of the hammock could deteriorate over time when exposed to nature and knew Jarmak intended to use the hammock, the court determined that a jury could reasonably find Ramos's inspection of the hammock inadequate. *Id.* at 293–94.

That conclusion did not end the court's inquiry, however, "because 'a negligent failure to inspect does not result in the imposition of liability unless it is established that a reasonable inspection would have disclosed the presence of the defect which caused the harm.'" *Id.* at 294 (quoting *United States v. Moran Towing & Transp. Co.*, 409 F.2d 961, 963 (4th Cir. 1969)). Accordingly, the court engaged in a constructive notice analysis, asking whether the unsafe condition—the frayed and rotten hammock ropes—had "existed for a sufficient period of time before Jarmak fell and was detectable upon an adequate inspection." *Id.* at 294. The court found that because ropes ordinarily fray and rot "over a considerable period of time," a reasonable jury could conclude that a reasonable inspection would have revealed the hammock's unsafe condition. *Id.* at 295.

Omni argues that, unlike the plaintiff in *Jarmak*, plaintiff has no evidence that Omni had constructive knowledge of icy conditions around the fountain. Plaintiff, relying on *Jarmak*, argues extensively that Omni's inspection was inadequate. However, as *Jarmak* makes clear, Omni can be liable here only if it had constructive notice of a dangerous condition that an adequate inspection would have revealed. *Id.* at 294; *see also Harrison v. Kroger Co.*, 737 F.

6

Supp. 2d 554, 557 (W.D. Va. 2010); *Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). Stated otherwise, plaintiff must establish constructive notice regardless of whether Omni's inspection of the premises was adequate.

In this case, plaintiff has failed to establish constructive notice because she has not shown that the ice around the fountain had existed for a sufficient period of time. Although evidence suggests that the conditions necessary for ice to form (*i.e.*, sub-freezing temperatures) had existed for some time, that evidence does not show when the specific ice on which she fell formed. *See Hodge*, 360 F.3d at 454 (requiring constructive notice of the specific condition that caused the injury). Even assuming that the ice came from water blown from the fountain, as Thomas suggests,[3] that event easily could have occurred shortly before plaintiff slipped: indeed, evidence that plaintiff and her husband walked by the same fountain less than an hour before her fall—without slipping or noticing ice—supports that conclusion. Because a jury could reach the conclusion that the ice had existed for a sufficient period of time only through "surmise, speculation and conjecture," *Colonial Stores*, 125 S.E.2d at 190, this theory is insufficient to survive summary judgment.

At the hearing on Omni's motion, plaintiff argued that because water takes time to freeze, a jury could infer that the ice on which she slipped had been there for a substantial amount of time. Plaintiff offers no authority for this position, and the court declines to accept it. The Supreme Court of Virginia and this court have both applied ordinary constructive notice principles to ice, requiring plaintiffs to provide evidence of how long the ice had been there. *See Adkison v. Frizzell*, No. 1:11-cv-89, 2012 U.S. Dist. LEXIS 113810, at *8–9 (W.D. Va. Aug. 14,

---

[3] There is no evidence of how the ice came to be in the area around the fountain. As Thomas suggests, it could have been blown by the wind from the fountain; as Omni suggests, plaintiff could have splashed water from the fountain during her fall with ice forming after the fall; or a guest could have spilled water while walking near the fountain. We simply do not know.

7

2012) (granting summary judgment against a plaintiff who slipped on ice in a parking lot where the plaintiff failed to establish when the ice formed); *Cannon v. Clarke*, 167 S.E.2d 352, 355 (Va. 1969) (setting aside a jury verdict and entering judgment in favor of defendants where plaintiff offered no evidence as to how long ice on the defendant's porch had been there). Furthermore, plaintiff has not shown that the ice at issue here would have taken a significant time to form. While the evidence in the record indicates that the temperature was well below freezing on the morning plaintiff fell, there is no evidence regarding the size or thickness of the ice found after plaintiff's fall. Because plaintiff has not shown that that the ice on which she fell existed for long enough to charge Omni with constructive notice, her claim must fail.

At the hearing, Thomas also argued that Omni created the dangerous condition through its own affirmative conduct, though the theory was not alleged in the amended complaint or argued in her brief.[4] In Virginia, when a premises owner affirmatively creates a dangerous condition, courts apply a foreseeability standard and impute notice on the owner of reasonably foreseeable dangers resulting from the conduct. *Harrison*, 737 F. Supp. 2d at 557; *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 231 (Va. 1986); *see Ashby*, 440 S.E.2d at 604–05. In such cases, the premises owner is "charged with constructive knowledge of the risk because it 'had a duty to exercise reasonable care to avoid the genesis of the danger.'" *Austin v. Shoney's, Inc.*, 486 S.E.2d 285, 288 (Va. 1997) (quoting *Yeatman*, 348 S.E.2d at 231).

Thomas claims that Omni had notice under this foreseeability test because it affirmatively caused the dangerous condition. The court disagrees. First, it is unclear what plaintiff alleges to be Omni's affirmative conduct—placing a water fountain in a partially covered and partially

---

[4] While Thomas's brief included the phrase "genesis of this danger" (Pl.'s Br. Opp'n 1) and mentioned that Omni's "failure to turn the fountain off in the presence of subfreezing temperatures created the situation where ice could be present in the area of the walkway and fountain . . . " (*id.* at 13), those statements were made in the context of her argument that Omni conducted an inadequate inspection.

8

screened outdoor area, failing to turn the water off when it was cold outside, or continuing to run the water when it was cold outside. *See Ashby*, 440 S.E.2d at 605 (contrasting affirmative and passive conduct).

Second, even assuming that Omni engaged in some affirmative conduct, plaintiff presents no evidence that ice on the walkway was foreseeable. Unlike the cases where foreseeability was found, there is no evidence that the fountain here could cause water or ice to accumulate on the surrounding walkway. *See O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (finding danger foreseeable where a bolt of fabric was leaning against a cutting table, in plain view of a salesperson, and store policy prohibited the practice for safety reasons); *Holcombe v. NationsBanc Fin. Servs. Corp.*, 450 S.E.2d 158, 159–60 (Va. 1994) (finding danger foreseeable where partitions were stored in a bathroom despite defendant's branch manager's knowledge that they might "topple"); *Yeatman*, 348 S.E.2d at 231 (finding danger foreseeable where a merchandiser of pepromia plants moved a plant forom its normal outside location, causing a leaf to fall, and where an expert testified regarding the effect of temperature changes on leaves). Here, the undisputed testimony of Omni employees was that they had never observed the fountain causing splashes, condensation, or moisture on the walkway around it. (Broce Dep. 12:9–14; Shober Dep. 34:18–23.) Plaintiff has not introduced evidence showing the wind speeds necessary to blow water from the fountain, or that the fountain was exposed to sufficiently strong winds.[5] *See Tompa v. 767 Fifth Partners, LLC*, 979 N.Y.S.2d 288, 289–90 (N.Y. App. Div. 2014) (affirming summary judgment on largely analogous facts). Furthermore, even assuming that wind could and did blow water from the fountain, as plaintiff suggests, the

---

[5] In opposition to Omni's motion, plaintiff submitted certified weather data purporting to show that it was consistently windy and below freezing from the evening of November 12, 2013, until the time when plaintiff tripped. (*See* Pl.'s Ex. 4, Dkt. No. 47-4.) Because the weather data was collected at an airport roughly 1,500 feet above the Homestead in elevation, and because the fountain area was sheltered, the court finds that these records are irrelevant to the weather conditions at the site of plaintiff's fall and will not consider them.

9

court cannot conclude that this was foreseeable because Omni employees testified that they had never received complaints of ice or water around the fountain. (Shober Dep. 41:4–16.) Accordingly, plaintiff's claim cannot survive summary judgment on this theory either.

## III. CONCLUSION

For the foregoing reasons, the court will grant Omni's motion for summary judgment. An appropriate order will be entered.

Entered: March 7, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge